So with that, we'll call the first case. And if both lawyers would step up, those that are going to be arguing can identify yourselves once we call the case. Case number 13-0507, People v. Wong, Caillou, Lee. Please step up. Good morning. Morning. Good morning, Your Honor. Good morning. Johanna Raymond, representing the Apple Lee, Dr. Wong, Caillou. And it's Raymond, last name? Raymond, R-A-I-M-O-N-E. Okay. Good morning, Your Honor. Assistant Attorney General Stephen Soltanzade, on behalf of the people. All right. And how do you pronounce that again? Soltanzade. Okay. All right. A little time mispronounced. I apologize. That's okay. All right. So, Mr. Raymond, you may have a seat and counsel, you may begin. Good morning. Good morning. May it please the Court, I am Assistant Attorney General Stephen Soltanzade on behalf of the people. The trial court here made two errors when it rejected the people's consent justification for the searches in this case. The first error was a legal error. The court wrongly held that consent cannot justify a search that has an administrative purpose. This was contrary to well-established authority. Because of that legal error, it did not make a factual determination as to whether a defendant actually consented in this case. Did the court say it was unclear? The court says it's unclear, but if a reading of that entire paragraph on consent reveals that really the court was talking, was making a legal determination. The court, in regard to the administrative justification of the search, makes numerous factual findings. And it's clear it's making factual findings. And if you look at the consent portion of the order, it's clear that there is no factual finding there. It says consent is unclear, and it follows that with a discussion of the law, of why the court believes that consent cannot justify an administrative search. So even though the court did determine consent was unclear, that was not a factual determination. There's no discussion of the testimony at the hearing. There's no discussion of anything else in the record. He did discuss it. He said it was, the doctor said, okay. Didn't mean if he agreed with it or was acquiescing in it. He just said, okay. And that's why the court said it was unclear. Well, the court, in another part of its order, cites that testimony. But in the consent analysis, where finally it makes that determination that consent is not applicable, it does not reference that testimony. I think page 8-4 of the appendix is the portion of that order where the court rejects the consent justification. And, again, it does have that line about consent authorized being unclear. Could I just interrupt for one minute? I want to clear one thing up because maybe I'm not understanding. But didn't the judge in this case also conclude that this was pretextual? Yes. Yes. Now, let me just get my questions out here. Okay. Now, if the court concluded that the search was really a pretext for a criminal investigation, it doesn't matter about the consent, or does it? It does matter about the consent. It does matter. Why? Well, the consent. No, because even if it was a pretextual search, invalid for whatever purpose, if it was for a criminal investigation, then the defendant could still consent to that invalid search. Yes. That's correct. On this record, if the pretext, if the investigators had recognized that there was case law out there that says that when it's pretextual, you can't really consent. If that pretext is coercive, if the police, for example, if these investigators come in, for example, and misrepresent their purpose, and that is a causation of defendant consenting, if that coerces him into consenting, or otherwise convinces him to let them into his business to make this search, then in that context, a misrepresentation, or I suppose a pretext, would be part of the consent analysis. Here, what the record shows is that before the investigators made their claim of, any claim of authority to search, Investigator Poyer, who's in Chicago, gets on the phone with the defendant, who's in Mount Prospect, and they have a conversation on the telephone, and that's where the consent takes place. Yeah, what was that? If you summed it up, what was the substance of the consent? Poyer testifies that he outlines the search that they want to conduct, and after hearing the search that the investigators want to conduct in the business, the defendant says okay. Granted, that does not sound like a lot. That's the defendant just saying okay, but if you compare that to other cases, it's actually more than we have in some other cases. For example, in People v. Henderson, which we cite in our brief, that's a case from our state Supreme Court. In that case, police officers who are armed in uniforms with a badge arrive at the house of the suspect they're searching for. The suspect's mother answers the door. She says her son is home. She points to the room. The officers go in, and they locate the suspect inside, and that was sufficient for consent, according to our Supreme Court. She didn't even verbally consent. Was that a pretext case? That was not a pretext case. So we're talking about what do you have as far as a pretextual case that you would use to support what occurred here? Well, what we have is the standard, the well-established standard from the U.S. Supreme Court on down to our Illinois appellate courts that have said consistently that the question is just whether investigators, a reasonable person in the shoes of these investigators, would believe that the defendant authorized their consent. And then we look at things like coercion. Was that consent voluntary? And that's where pretexts can play a role. Well, let's assume for our purposes today that if we conclude that the consent was really – I'm sorry, the search, rather, was pretextual for a criminal investigation, then how do we analyze this? Even if it was a pretext and this was just a criminal investigation dressed up as an administrative investigation, even if it had a criminal purpose and these investigators were acting as criminal agents, and we dispute all of that. Of course you do. Even if they were, the question is still the same. What? Whether a reasonable person in these investigators' shoes believed that the defendant voluntarily consented to the search. Whatever the purpose of the search, whatever the target of the search, whatever the investigators are looking for, a defendant can authorize a search by consenting. Well, if they're not telling him that they're looking for criminal information, isn't there some sort of a – about the case to say that that's where you really can't be consenting? Well, if they had misstated what they were looking for, or if they had affirmatively misstated their purpose, if they had said to him before he consented, look, we're here for a purely administrative purpose to see if you're in compliance with Medicare. Well, what did they say? Are you saying they said we're looking for stuff to get you out? They outlined – we don't have – the record's not specific precisely how Porter described the scope of the search. But there's nothing in the record suggesting it was inconsistent with the actual search they undertook. If the defendant then establishes that there isn't anything sufficient, who has the burden to show that there was a consensual search here? Well, the initial burden is on the defendant to come forward. Right. But then it becomes the people's burden to show consent. But if you're saying it's not very clear, how have you met your burden then? Well, it's not clear the exact words Porter uses to describe the search. But the most reasonable reading of the record is that he says that he described what they wanted to search. And there's no reason to believe from this record that he was – Oh, but he doesn't ask for consent. He doesn't say, is it okay if we come in? There's no testimony in that regard. My understanding of the testimony is that they say – they have this letter and they say, we're here, we're going to search and this is what we're going to do and this is what we expect of you. And the guy goes, okay. Well, why isn't that just acquiescence? Well, he – Porter says two things. First, he says defendant authorized the search. And then he says – Well, but that's a conclusion. Without saying – I'm sure the guy didn't say, I authorized the search. Let's stay away from conclusions. The testimony is that they said, this is what we're here for, this is what we're going to do, and the key in all the briefs is this one word, okay. Well, do you have a case that says that when faced with a show of authority, that just saying okay is consent? Especially when it's your burden to show that it's consensual? Well, here's what we have. I think there are a couple of answers. First, we have cases where nonverbal conduct is sufficient. So okay is at least a verbal – it's acknowledgement of understanding what – Well, this isn't nonverbal. This is okay. This is verbal and nonverbal. He says okay and then everything he does from that point forward is entirely consistent with someone who had volunteered. Well, what do you expect him to do? Fight him off? Bar the door? No. What's he supposed to do when he's faced with all these people with a letter and them saying we're coming in? What is he supposed to do? Say no, you're not? And then, you know, face the consequences of that? Well, when Poyer first talks to a defendant, the defendant first says okay, he's not faced with a letter that says we're coming in. Poyer is in another location. That's a telephone conversation. Do you have any cases with consent on the phone? We don't have any cases with consent. There aren't any that you were able to find, right? That's true, Your Honor. It's usually not done that way, is it? No, but – You pick up the phone, hey, can I come out to your house and see what you got there? No, but – I don't remember any cases like that for any kind of searches. I agree, Your Honor. But in a lot of ways that's far less coercive. You don't have, for example, a police officer who's armed with a badge. Well, actually, it kind of sets sort of a, you know, I think it sets up someone for some comfort that maybe isn't really appropriate. Is there any testimony that, in this conversation, that the subject of this search was told he has a right not to consent? There's no testimony like that, Your Honor. And there's no written consent? There is no written consent. And nothing in writing saying he can refuse? That's true, Your Honor. Now, your opponent's going to get up and say that if we find that this was pretextual, we don't need to determine consent. It doesn't even come into the equation. Because misrepresenting the criminal purpose vitiates any consent. That may be their position, Your Honor. That's not what the trial court determines. It doesn't matter because we're reviewing it at the end of the day to no vote. And this is what they say in their brief. They say that if we uphold the finding that the audit was a pretext, we need not reach the question of whether it was a constitutionally valid administrative search, nor must we consider the argument, the state's argument on the issue of consent, because under People v. Doherty, misrepresenting the criminal purpose of the search vitiates consent. So do you take issue with that? I do. I take issue not as a principle, but I take issue with its application in this case, because it was not that misrepresentation that caused the defendant to consent. If there was some, we have to look at the timeline here.  or any misrepresentation that goes to pretext, if they're claiming we're here for a purely administrative search in this court. And they didn't do that? They didn't say we're here to look at things for administrative purposes? They say we have no reason to doubt that what Poyer says when he outlines the search is exactly what they ended up doing, which is look at records that were relevant to this Medicare audit. That's it right there. When he says we're here to audit you for the purposes of Medicare, and I'm an agent of what? What's he an agent of? Well, he's an agent of a private agency that's contracted with the Department of Health and Human Services. So that's saying something other than I'm here on behalf of the FBI. And wouldn't that be a misrepresentation if he was actually working for the FBI or helping the FBI? If he had been working for the FBI. That's the misrepresentation. I suppose that would be a misrepresentation. And so if Judge Burns found that this was really just a ruse to help the criminal investigation, there's your misrepresentation that voids the consent. Well, I guess I will separate this out into a couple of questions. First is whether he was working on behalf of the criminal agency. Here I think the allegation is the FBI. I'll set that aside for a second. But he did not misrepresent the scope of the search or what they were looking for. But what about who he was acting on behalf of? The underlying concept is that the person who was the subject of the search at the time he gave consent was not told that he was the subject of a criminal investigation. And so if he had been told he was the subject of a criminal investigation, he may not have consented. That's the issue. He may have called his lawyer. Right. One moment here. On this pretext, the trial court, the trial judge, clearly found that this was a pretext for a criminal investigation. Did he not? Yes, that's true. So how do you get over that manifest weight hurdle? Those were based on factual determinations of who these people were, who they worked for, what they were doing. How do you get past the manifest weight? Those factual findings went to a different question that the trial court was addressing. The trial court was asking if the people are saying that this search was justified by the statutory authority, which brings us into the administrative search exception to the warrant requirement, these are the factual findings that negate any administrative authority these investigators have. Because there was a pretext and a pretext, an administrative search, an administrative search exception, can never be lawful if there's a pretext. That did not go to consent. Here's why it matters. You're missing what I'm asking. Either one way or the other, are you going to agree that the trial judge found this was a pretext for a criminal investigation? Yes, the trial court made that find. And when he did that, he made certain findings of fact, which we accept as true, unless they're against the manifest weight, and the manifest weight standard is fairly tough for you to get over, for us to reject those findings of fact. That's true. Okay, so that was my question to you. How do you get past those findings of fact? Are you telling us now that we have to, well, you're saying they're against the manifest weight? Well, here's what we're saying. Let me try to make my position clear. First, we're saying that those findings and the question of pretext is not relevant to consent. We've talked about that already here. I think I made my position known. Second, as we said in our brief, regarding those findings as it comes to pretext, the findings themselves are subject to this high standard of review. But the legal conclusion that those add up to pretext is not. And all the trial court really, if you look at those factual findings, the determination the trial court really makes is just that there was a lot of communication. The factual findings add up to there being a lot of communication between this private investigator, or this group of private investigators that's contracted with the federal government and the FBI. And there is a lot of communication. But that doesn't add up to a criminal pretext. In fact, as a policy matter, there's no reason that there should be interference or some negative consequence for the government just because the private investigators- But you just said that that's de novo, whether this was a pretext is de novo in your remarks. Yes. But United States v. Johnson cited by your opponent says, whether an administrative search is a pretext for a criminal investigation is a factual question. Well, I think the ultimate- I think that's true. Even so, the trial courts, if the record doesn't support the ultimate- I guess there are a couple questions. Whether the search was valid is ultimately a legal question. And so the findings aside, that question is reviewed de novo. The findings are subject to a high standard of review, but they have to be supported by the record. And while many things the trial court says in its order in its factual findings are supported by the record, the pretext determination is not supported by the record. Because there's really nothing there to suggest that these agents were working on behalf of the FBI. There's affirmative, uncontradicted testimony from both of those investigators who testified that they were not working at the direction of the FBI. No one in the FBI told them what to look for. And that's uncontradicted. The FBI told them when to go in. Yeah. They wanted to go in sooner. Yes, Your Honor. They did want to go in sooner, and the FBI asked them not to because- And did they also ask them not to let anybody know there was a criminal investigation going on? I believe so, Your Honor. What does that suggest? That suggests these private investigators were complying with the wishes of law enforcement, which is something we would like them to do. There's every reason for them. That doesn't at the same time support the idea that they were working for them? It supports the idea that they were listening to the FBI and trying to cooperate. That's a far cry from the FBI telling them to go into this site, find us certain documents that will support a criminal investigation, and then bring them to us. Wasn't there an understanding that everything that they found was going to be shared with the FBI? And, in fact, wasn't that the case? Didn't they have daily briefings telling the FBI what we found today? I mean, what's the difference between the FBI walking in there or this private company walking in there and then reporting to the FBI every night? Well, I believe the testimony was that if they uncovered anything of a criminal nature, they would share it with the FBI. That's different than testifying that the FBI directed them, look, we have this target of our investigation. We need to get in there. We don't want to get a warrant or can't get a warrant, so what we're going to do is send you in there. I want you to find these files that support criminal charges and then bring them to us. A private investigator saying, I'll share anything I find that suggests there's criminal activity with you, doesn't mean that this was a pretext for the criminal search. This is just one agency. What about their own documents, trust's own internal documents? Their documents state the audit's objective was to find evidence to further substantiate the allegations against Dr. Lee and refer the matter to law enforcement based on all the evidence gathered. So what does that say about the purpose? Well, I think when you look at it from Trust Solutions' perspective, the allegations are, we hear that word when we think of criminal allegations, but really they have a referral suggesting that there was some activity that was not compliant with those Medicare regulations. And so to them, they're going to verify whether that's true or not. The testimony at the hearing from both investigators again was that the purpose was just to ensure that this company was complying with the provisions of their Medicare contracts and all the Medicare regulations. Well, you're going to have to move along and then save some time for rebuttal. Yes, Your Honor. I'll just conclude again by reiterating the standard for consent. All we do is we look at what those investigators knew at the time that they secured defendant's consent. It's a reasonableness standard. The record supports that defendant consented. And with that, I will say remain in my time for rebuttal. Thank you. Ms. Raymond, thank you. Ms. Raymond, why don't we go further and consider the issue of consent if this was simply a pretext? You would not, Your Honor. But why not? The reason, there's a couple reasons why not. The argument on consent is that Dr. Lee was asked to consent to this audit. And that was consenting to an audit, not consenting to a criminal investigation. So we still are in the same problem, which is if you're using an administrative scheme to search for criminal evidence, you can't do that. That's what People v. Madison says. That's also what United States v. Berger says. They call it a fundamental principle in the law of administrative searches that you cannot use an administrative scheme in order to find criminal evidence. So whether Dr. Lee consented, which we don't believe that the record supports, or the government carried the burden of proof on that, or if there was a show of legal authority, either way, that was only to do the administrative audit. And the true purpose was to search for criminal evidence. That was Judge Byrne's finding based on ten specific findings of fact. But can't you have consent to an unlawful search? No. And the reason for that is it goes to whether the search is voluntary. Whether the consent is voluntary. I'm sorry. Yes, Your Honor. Whether the consent was voluntary. And knowing. Yeah, knowing and voluntary. That's absolutely right. That's the Bustamante case. Does the law presume that when this stated purpose is really something other than what it is, that you really can't consent? Is that your position? That it's an acquiescence to this? Yes, Your Honor, it's an acquiescence. That's exactly right. That's the Bumper case and that's the Biswell case. Once there is a show that the agents claim to have the lawful authority to search, any quote, unquote, consent is really just acquiescence. You're not interfering with that claim to lawful authority. And, in fact, in the Biswell and the Bumper cases, that law developed to avoid exactly what's going on here, which is when the government goes in and claims to have the legal authority to conduct the search, and then it later turns out that that lawful authority is not lawful, the government tries to go back and say, yeah, but they let us in. They let us conduct the search. And what the United States Supreme Court held in Bumper and Biswell is that that's no good. Once you make a claim of lawful authority, it's acquiescence. It's not consent. So Judge Burns was absolutely correct on this record to rule that. Well, how do we intertwine this lawful purpose with the pretext? The issue of pretext, I believe, is determinative. And that is because whether Dr. Lee consented to the search like the state claims or whether there was a claim of lawful authority, as we believe the record suggests, it was only to conduct an administrative search. And under New York v. Berger and People v. Madison, which is an Illinois Supreme Court case, you may not use an administrative search to search for criminal evidence. And Judge Burns found, as a matter of fact, that that was the purpose of the search. So that whether it was by consent, whether it was by a claim of lawful authority, if it was pretextual, it is unconstitutional, and the evidence should be suppressed. I would also like to point out, we believe that takes care of the whole issue. But on the issue of consent, the state is only pointing to part of the record. The state claims that Dr. Lee never received this audit letter, and that instead he was in Mount Prospect and he got a call from the Chicago auditor. That's not what the record shows. The record shows that there were two sets of auditors, one in Mount Prospect and one in Chicago. And the Mount Prospect auditor testified that the first thing he did is to introduce himself to Dr. Lee and to hand him a copy of the audit letter. And that's the letter that says, we will be conducting an audit, we will be looking at this document, we will be doing this. So Dr. Lee had a copy of that letter when sometime after the Chicago auditor arrived, he called Dr. Lee. And we know that because of the testimony that it was deliberately a simultaneous arrival. In addition, if you look at the testimony of the Chicago auditor, and I think Justice Palmer, you pointed out that he didn't ask for permission. What he said specifically is, I notified Dr. Lee of what the on-site audit would entail, provided that I had indicated the letter to his office manager. That's notifying. That's not asking permission. He was notifying him of the legal authority. The auditor in Mount Prospect- Was this okay? Does that indicate something? It indicates that the auditors were asserting their legal right, they had the lawful right to search Dr. Lee's offices. They weren't asking for permission. And that's how you get into the Biswell and Bumper line of cases. That's what makes it, once you claim to have legal authority to search, any consent is really just stepping out of the way of the officers who claim to have that legal authority. It's acquiescence is the word that you use. It's kind of asking a lot of citizens to stand in the face of, I've got the lawful authority to come in and I'm going to do this and I'm going to do that. I think it's asking a lot of citizens to say, no, you're not coming in. Absolutely. Because then you're asking, in order to not be consenting, you're asking the citizen to subject himself or herself to whatever sanction is going to result in, maybe obstruction of justice or whatever. Absolutely. Or loss of your Medicare license or whatever by failing to get out of the way. Absolutely. Saying okay is just not interfering, not obstructing. How do you answer the, go ahead, I'm sorry. Do you have to ask for consent? In order to, To establish consent. Does there have to be a question posed? No, Your Honor, they're just not under Anthony, excuse me, Fuqua versus Anthony, it just has to be unmistakably clear as the standard. And it certainly wasn't here. Judge Burns found it was unclear. So how do you answer that, their citation to Henderson, he's right over there, and Adams were, yeah, she goes like this and holds up her arm and lets him in. Not a consent issue. You distinguish those, I assume. Yes. In the Henderson case dealt with the issues, I recall, of whether there was consent. Yeah, it was the defendant's mother and they said they're looking for the defendant and she goes, he's in there, and that's consent. Right, and they say it's unmistakably clear based on the behavior of the, but that's not what's going on here. Here you have them going in and making a show to have legal authority. They hand Dr. Lee the letter, they flash their Medicare badges, he's already signed a contract with Medicare saying that he has to follow all the Medicare rules. So here it's a very different fact pattern because there's a claim to have the legal authority to search. So that's what makes it like the bumper case, the North Carolina versus bumper case, where they go to the door and they say, hi, we're here and we have a search warrant. And later it turns out they didn't have a search warrant. And they said, but you know what, they consented. They said, come on in. And the United States Supreme Court said no because once you claim to have the legal authority to search, that's only acquiescence. So that's, Your Honor, how I would distinguish those cases. What about their argument that, we didn't hear it today, but in the briefs that they contractually consented by participating in the Medicare program? Well, that gets into whether it was an exception to the Fourth Amendment's warrant requirement on the basis of an administrative exception. They've actually in the reply brief withdrawn that argument because the statute that they cited actually didn't provide the constitutional safeguards required under New York v. Brenner. Anything more? No. Thank you. And we'll hear a rebuttal now. Just very briefly, just a couple of points.  First of all, I think we agree that if a target of a search really acquiesces to a search, and instead of actually voluntarily consenting, that that's unlawful. That's true. It's true that if investigators come in, make a claim of lawful authority to search, whether valid or invalid, then defend a consent, that that consent can't authorize the search. I think the dispute here is really about the record. Poyer testifies. The first thing we know that happens is that Poyer walks into the Chicago office, talks to the office manager, hands her this letter outlining the search, and then gets on the phone with the defendant and has that conversation, which we've already detailed. We know that the investigators in Mount Prospect also arrive. They also show this letter to the defendant. There's nothing in the record suggesting the defendant had read this letter or had this letter in his hand at the time he has this conversation with Poyer. So, yes, it's true that if these investigators made a claim of lawful authority to come in and make this search, that that would negate any consent, but that's not the case we have here. That's not what the record shows. And that's really the dispute. In addition to the telephone conversation, we can look at the rest of the circumstances. As Henderson says, it's relevant to look at whether or not the defendant or the target of the search objects to the search. And here we don't have that. Yes, it's true if a bunch of police officers arrive at a location and they're armed and they come knocking on a door and they say, we're coming in, the defendant probably wouldn't feel comfortable to object. But I think it's good to contrast the circumstances here with those in Henderson or a case where the police ask for consent to search. These are investigators who are unarmed. They're wearing laminated ID cards, not badges. They specifically testified, both investigators, that they didn't make any threats. They didn't use any other language that would cause the defendant to be fearful. And then the defendant not only consents, and that's obviously in dispute, but he does everything you'd expect someone to do who had voluntarily consented. He doesn't just comply. He gives the investigators a room to work in. Because if he didn't, he would lose all his Medicare payments, or at least the payments. If he did not allow them in under administrative review, what would have been the next step that Medicare would have done to the gentleman? He would have been in a prepaid operation. We can't assume there would have been some Medicare consequences. But these investigators never tell the defendant, or at least there's no testimony in the record, that anyone told the defendant, you're going to lose your Medicare if you don't let us in and conduct a search. They also never told them, oh, by the way, as soon as we leave here, we're going to call the FBI and tell them everything we found. Now, do you think it's reasonable to assume that he may not have been as cooperative, he may not have given them a place to sit and handed them all the files, if they also told them, oh, by the way, by letting us in here today, you're also letting us get all this information to give the FBI? Well, I think there are a couple answers to that. It would have been nice to tell them that, don't you think? I think it would be fair for a reasonable citizen to assume that if someone who has a contract in Medicare, and clearly he understands Medicare, he signed a Medicare contract, he understands he's dealing with the government, when these private investigators come in and look at his offices, it's reasonable to assume that a sophisticated business person like this defendant would understand if these investigators see evidence of criminal activity, they're probably going to say something to someone. That argument asks us to ignore the whole theory of pretext. You're asking us to say that in any case that there's an administrative search, the citizen should realize that this information is going to be shared in a criminal investigation. Well, I think the response to that is even in criminal contexts, we uphold consent searches all the time where these defendants are uninformed or misinformed. Police officers come to the door, they knock, they say, hey, can we come in? And the defendant or the homeowner says, sure, you can come in. And then they find all sorts of things that suggested illegal activity. We say that's a fine consent search. We don't make those officers educate the defendant about the law. How is that, in that scenario that you just made up, how is that citizen misinformed? Well, they're not affirmatively misinformed. And, again, it's our position. That's what you just said. We uphold searches where citizens are misinformed. I mean, how can you say that we uphold consents where people are misinformed? Well, I guess I misspoke. I'm not saying where they're affirmatively misinformed by investigators. That's true, Your Honor. And, again, we don't disagree on the law. I don't think the parties disagree that. If the officers come and they tell a lie to a defendant about the purpose of the search, that a search is purely administrative when it's actually criminal, that that search is okay. But it's our position that's not what happened here. Defendants are always free to consent. They do it all the time, and sometimes with bad reason, and sometimes when they don't understand the law or the consequences of their decision. Our courts have said that consent, whatever the reason, whatever the purpose, in fact, investigators don't even need, or officers don't even need suspicion. They can walk up to anyone and ask for consent. And if that consent is granted, then the search is lawful. It's simply a reasonable decision. What about this primary purpose versus dual purpose argument? Well, again, that comes up when the government is justifying a search based on the administrative search exception. The government says, we have these statutes that authorize the search. They're compliant with Berger. They're compliant with the warrant requirement. And there the question in regards to pretext, the dispute I think that came up in the briefing, is does any criminal purpose negate the administrative search, or does the criminal purpose have to be the primary purpose of the search? But I don't think that's applicable here where we're relying purely on the consent of defendant for the search. As we said in our papers, our position is that any modicum of criminal suspicion wouldn't negate an otherwise valid administrative search. We don't look at the subjective intent or belief of the investigators when they conduct an administrative search. Now, if their primary purpose, if it's truly a ruse, if it's truly the FBI trying to use this and around the Fourth Amendment, then, of course, that's unlawful. Isn't that what the judge concluded here? I think the judge concluded that in rejecting the administrative search exception. These were two independent justifications. There was consent. There was the administrative search justification. The judge made numerous factual findings that went against the government's position on the administrative search exception. On the consent exception, again, it's our position that a reasonable person in these investigators' shoes would have heard what the defendant said, would have saw how he acted, and would have believed that he was allowing them to make the search they wanted to search. If there are no further questions, we ask you to reverse the judgment. Thank you very much. The case was well-argued and well-briefed, and we will take it under advisement.